UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ZEAVISION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21 CV 739 RWS |
| | ) | |
| BAUSCH & LOMB INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case is before me on Defendant Bausch & Lomb Incorporated's motion to stay all proceedings pending *inter partes* review ("IPR").  (Doc. 22).  For the reasons explained below, Bausch's motion will be granted.[1]

## BACKGROUND

Plaintiff ZeaVision, LLC is a manufacturer and distributor of orally ingested formulations that promote eye health.  For years, ZeaVision has researched and innovated the use of zeaxanthin to promote eye health in the field of pharmacology and nutritional supplements.  In the course of its research and innovation, ZeaVision developed oral formulations of "ocular-active nutrients" that act with zeaxanthin in

---

[1] I note that Bausch filed a similar motion to stay in the case of ZeaVision, LLC v. Bausch & Lomb Incorporated, No. 4:21 CV 1352 SEP, which was consolidated with the present case on March 1, 2022.  The arguments raised by ZeaVision in its opposition to Bausch's motion to stay in case No. 4:21 CV 1352 SEP are incorporated into the discussion in this Memorandum and Order.  Because the two cases have been consolidated, in granting the present motion to stay, I will also be granting the motion to stay filed in case No. 4:21 CV 1352 SEP.

a synergistic and potentiating manner.  ZeaVision applied for patent protection of such oral formulations, resulting in ZeaVision being issued U.S. Patent Nos. 10,307,384 (the "'384 patent"), 11,045,431 (the "'431 patent"), and 11,173,133 (the "'133 patent") (collectively, the "patents-in-suit").

Bausch competes with ZeaVision in the field of pharmacology and nutritional supplements related to orally ingested formulations that promote eye health.  Like ZeaVision, Bausch manufactures and distributes oral zeaxanthin formulations with additional ocular-active nutrients.  ZeaVision claims that Bausch has made, used, sold, offered for sale, and/or imported products that infringe on the patents-in-suit.  According to ZeaVision, Bausch's infringing products include its Ocuvite Lutein & Zeaxanthin; Ocuvite Eye Health Gummies; Ocuvite Eye + Multivitamin; Ocuvite Eye Health Formula; Ocuvite Eye Performance; Ocuvite Adult 50+; PreserVision AREDS 2 Formula (mini gels); PreserVision AREDS 2 Formula Chewables; and PreserVision AREDS 2 + Multivitamin.

On June 22, 2021, ZeaVision filed this lawsuit, alleging that Bausch infringes on at least claim 12 of the '384 patent.  ZeaVision filed an amended complaint a week later, adding a claim for infringement of at least claim 1 of the '431 patent.  On October 22, 2021, Bausch filed a petition for IPR with the United States Patent Trial and Appeal Board (the "PTAB"), seeking to have every asserted claim of the '384 patent invalidated in view of prior art that the United States Patent & Trademark

Office (the "PTO") did not consider before issuing the patent.[2]  Bausch filed the present motion to stay shortly thereafter.  In its motion, Bausch requests that I stay all proceedings in this case pending IPR of the '384 patent.

On November 16, 2021, ZeaVision filed a separate but related lawsuit against Bausch in the case of <u>ZeaVision, LLC v. Bausch & Lomb Incorporated</u>, No. 4:21 CV 1352 SEP, alleging that Bausch infringes on at least claim 1 of the '133 patent. As in this case, Bausch filed a motion to stay all proceedings pending IPR of the '384 patent.  On March 1, 2022, I granted Bausch's motion to consolidate case No. 4:21 CV 1352 SEP with the present case and directed the Clerk of Court to administratively close case No. 4:21 CV 1352 SEP.

## LEGAL STANDARD

A federal court has "the inherent power to grant a stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it." <u>Webb v. Rowland & Co., Inc.</u>, 800 F.2d 803, 808 (8th Cir. 1986). This includes the power to grant a stay pending IPR.  <u>Masa LLC v. Apple Inc.</u>, No. 4:15-CV-00889-AGF, 2016 WL 2622395, at *2 (E.D. Mo. May 9, 2016) (citing <u>Procter & Gamble Co. v. Kraft Foods Glob., Inc.</u>, 549 F.3d 842, 849 (Fed. Cir. 2008)).  While the decision to grant a stay is a matter within a district court's

---

[2] Bausch has represented that it also intends on filing IPR petitions regarding the '431 and '133 patents once they become IPR-eligible.  Bausch believes the '431 patent will become IPR-eligible on March 29, 2022, and the '133 patent will become IPR-eligible on August 16, 2022.

discretion, the "interests of judicial economy and deference to the PTO's expertise have led to a liberal policy in favor of granting stays" in patent litigation. Intellectual Ventures II LLC v. Commerce Bancshares, Inc., No. 2:13-cv-04160-NKL, 2014 WL 2511308, at *2 (W.D. Mo. June 4, 2014) (internal quotation marks omitted).

When deciding whether to grant a stay pending IPR, I must consider: (1) whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in the case and facilitate trial; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage for the non-moving party. Lineweight LLC v. Firstspear, LLC, 4:18-cv-00387-JAR, 2019 WL 4015824, at *1 (E.D. Mo. Aug. 26, 2019).  Although some courts have waited until the PTAB has instituted IPR before granting a stay, others have granted stays before the PTAB's initial decision, and "the Federal Circuit has 'expressed no opinion on which is the better practice.'"  Masa, 2016 WL 2622395, at *2 (quoting VirtualAgility Inc. v. Salesforce.com, Inc., 759 F.3d 1307, 1315–16 (Fed. Cir. 2014)).

## DISCUSSION

Having considered Bausch's motion in light of the relevant factors, I find that a stay is appropriate in this case.  The first two factors weigh in favor of a stay, and the third factor is either neutral or weighs only slightly against a stay.  Furthermore, while the PTAB has not yet decided whether it will institute IPR of the '384 patent, there is a high probability that the PTAB will institute IPR, and the potential benefits

4

of IPR outweigh the short delay caused by a stay if the PTAB decides not to institute IPR.  See Intellectual Ventures II, 2014 WL 2511308, at *4 (collecting cases) (noting "courts routinely grant stays based on the filing of an IPR petition because the high probability that the request will be granted and potential benefits of IPR outweigh the relatively modest delay resulting from the stay if the petition for IPR is denied").

## A.     Stage of the Case

The first factor weighs in favor of a stay.  This case was just more than four months old when Bausch filed the present motion to stay.  A scheduling order has not been entered.  Discovery has not commenced.  And a trial date has not been set.  Because this case is at such an early stage, the first factor weighs heavily in favor of a stay.  See VirtualAgility, 759 F.3d at 1317 (finding the first factor heavily favored a stay because, when defendants filed their motion to stay, the case was less than four months old, discovery had not begun, and a trial date had not been set); Security People, Inc. v. Ojmar US, LLC, No. 14-cv-04968-HSG, 2015 WL 3453780, at *2 (N.D. Cal. May 29, 2015) (finding the first factor weighed heavily in favor of a stay where the filing of defendant's answer and counterclaims, the first case management conference, and service of plaintiff's infringement claims occurred in the previous three months); Inteplast Grp., Ltd. v. Coroplast, Inc., No. 4:08-CV-1413 CAS, 2009 WL 1774313, at *2 (E.D. Mo. June 23, 2009) ("A stay is particularly appropriate in cases in the initial stages of litigation where there has been little discovery.").

**B.     Simplification of Issues**

The second factor also weighs in favor of a stay.  As a practical matter, there are three possible outcomes for Bausch's IPR petition regarding the '384 patent: (1) the PTAB decides not to institute IPR, and the issues in this case remain the same; (2) the PTAB invalidates all challenged claims, and the claims in this case regarding the '384 patent are resolved; and (3) the PTAB finds some or all challenged claims are valid, and Bausch is estopped from asserting invalidity of those claims in this case.  In two of the three possible outcomes, the issues in this case are simplified. See Masa, 2016 WL 2622395, at *3 (quoting 35 U.S.C. § 315(e)(2)) ("IPR will resolve some or all of the issues in this case if the claims are invalidated.  And if the claims survive, IPR will streamline the litigation because [defendant] will be subject to statutory estoppel, precluding it from asserting invalidity in this lawsuit 'on any ground that it raised or reasonably could have raised during [IPR].'"); Intellectual Ventures II, 2014 WL 2511308, at *3 ("There is no question that the invalidation of some or all claims, or alternatively estoppel of some invalidity contentions, would simplify these proceedings.").

ZeaVision argues that a stay would not simplify the issues in this case or reduce the burdens of litigation because (1) whether the PTAB will institute IPR of the '384 patent is speculative; and (2) regardless of Bausch's IPR petition regarding the '384 patent, it still has claims for patent infringement of the '431 and '133

6

patents.  As support, ZeaVision cites Dane Techs., Inc. v. Gatekeeper Sys., Inc., No. 12-2730 ADM/AJB, 2013 WL 4483355 (D. Minn. Aug. 20, 2013), where the court concluded that the second factor weighed against a stay because the PTAB had not yet decided whether to institute IPR, and the defendant had filed IPR petitions regarding only two of the three asserted patents.  Id. at *2.

ZeaVision's argument is unpersuasive.  First, as noted above, it is not uncommon for courts to grant stays before the PTAB has decided whether to institute IPR.  See Provisur Techs., Inc. v. Weber, Inc., No. 5:19-cv-06021-SRB, 2019 WL 4131088, at *2 (W.D. Mo. Aug. 29, 2019) (staying all proceedings until the PTAB's decisions as to whether to institute IPR); Security People, 2015 WL 3453780, at *6 (granting defendant's motion to stay pending the PTAB's decision as to whether to institute IPR); Intellectual Ventures II, 2014 WL 2511308, at *5 (granting defendants' motion to stay pending IPR before the PTAB had decided whether to institute IPR).

Second, while the Dane Techs. court found that the second factor weighed against a stay in part because the defendant had not filed IPR petitions regarding all asserted patents, many courts have rejected such a view.  See ACQIS, LLC v. EMC Corp., 109 F.Supp.3d 352, 358 (D. Mass. 2015) (collecting cases) ("Other courts have granted stays even where, as in this case, the IPR proceedings do not involve all asserted patents or claims."); Telebrands Corp. v. Seasonal Specialities, LLC, No.

17-cv-4161 (WMW/HB), 2018 WL 1027452, at *5 (D. Minn. Feb. 23, 2018) (collecting cases) (noting several cases in its district where the court concluded a stay was warranted even though some asserted patents were not undergoing review); see also Intellectual Ventures II, 2014 WL 2511308, at *3 ("The relevant inquiry … is not whether the IPR would completely resolve this case, but rather whether it would make this litigation simpler and more efficient.").

Third, it is significant that the patents-in-suit are related.  The '133 patent is a continuation of the '431 patent, which in turn is a continuation of the '384 patent. The fact that the patents-in-suit are related further supports a finding that the second factor weighs in favor of a stay.  See ACQIS, 109 F.Supp.3d at 357–58 (finding the second factor weighed in favor of a stay even though some asserted patents were not undergoing IPR, in part, because there was significant overlap among the patents); Procter & Gamble Co. v. Conopco, Inc., No. 1:13-cv-732, 2014 WL 12656915, at *5–7 (S.D. Ohio Apr. 23, 2014) (same); see also Conopco, 2014 WL 12656915, at *7 ("Given the heavy overlap between the patents, the same prior art will also be asserted against both claims subject to IPR and claims not subject to IPR.").

Given the substantial likelihood that IPR will simplify the issues in this case, the second factor weighs in favor of a stay.  See ACQIS, 109 F.Supp.3d at 358 (finding the second factor weighed slightly in favor of a stay even though only two of eleven asserted patents and only three of twenty-two asserted claims were

undergoing IPR); <u>Oticon A/S v. GN Resound A/S</u>, No. 15-cv-2066 (PJS/HB), 2015 WL 5752429, at *4 (D. Minn. Aug. 5, 2015) (concluding judicial and party resources would be most effectively utilized by staying the case pending IPR, despite IPR being limited to certain invalidity claims, because IPR would "narrow and streamline the issues" and "provide the [c]ourt with the benefit of the PTO's guidance"); <u>Security People</u>, 2015 WL 3453780, at *4 (finding the second factor weighed "heavily in favor of granting the stay" even though the PTAB had not yet decided whether to institute IPR).

### C.   Undue Prejudice

The third factor is either neutral or weighs only slightly against a stay.  In weighing the third factor, courts consider whether "the parties are direct competitors, whether the non-moving party seeks solely monetary damages or instead seeks injunctive relief, and whether the moving party possessed a 'dilatory motive' or is otherwise attempting to gain an unfair tactical advantage."   <u>Masa</u>, 2016 WL 2622395, at *3 (citing <u>VirtualAgility</u>, 759 F.3d at 1318–19).  "'The mere potential for delay … is insufficient to establish undue prejudice.'"  <u>Id.</u> (quoting <u>Intellectual Ventures II</u>, 2014 WL 2511308, at *3).

ZeaVision argues that it would be unduly prejudiced by a stay because a stay would impede its ability to compete with Bausch, a direct competitor, in a field where Bausch is the largest player.  ZeaVision also argues that a stay would put it at

a tactical disadvantage because (1) regardless of Bausch's IPR petition regarding the '384 patent, it still has claims for patent infringement of the '431 and '133 patents; (2) a stay would cause a risk of losing evidence as time passes due to memories fading and documents being lost; and (3) the '133 patent will likely expire before the PTAB renders a final decision regarding the '384 patent.

Although ZeaVision claims that it would be unduly prejudiced by a stay because Bausch is a direct competitor, the parties' relationship does not necessarily determine the appropriate weight to be given to the third factor. See Carlson Pet Prods., Inc. v. North States Indus., Inc., No. 0:17-cv-02529-PJS-KMM, 2018 WL 1152001, at *5 (D. Minn. Mar. 5, 2018) (finding the appropriate weight to be assigned to the third factor was not "decisively resolved" by the parties' relationship as direct competitors, but rather required "a focus on the specific record presented"). Indeed, it is not uncommon for courts to find that the third factor does not weigh against a stay despite the parties' relationship as direct competitors. See Provisur Techs., 2019 WL 4131088, at *2 (finding the third factor weighed in favor of a temporary stay despite plaintiff's claim that the parties were direct competitors); Telebrands, 2018 WL 1027452, at *3 (finding the third factor did not weigh against a stay even though the parties were direct competitors); Security People, 2015 WL 3453780, at *5 (finding the third factor was either neutral or weighed only slightly against a stay where the parties were direct competitors).

Based on the record before me, I find that ZeaVision will not be unduly prejudiced by a stay.  Any delay could, of course, prejudice ZeaVision in the marketplace because ZeaVision and Bausch are competitors.  However, money damages and a permanent injunction are "ordinarily adequate to remedy the harm caused by infringement, including loss of sales and market share." Oticon A/S, 2015 WL 5752429, at *2.  A stay will not dimmish the monetary damages to which ZeaVision will be entitled if it ultimately prevails—"it only delays the realization of those damages and delays any potential injunctive remedy." VirtualAgility, 759 F.3d at 1318.  Moreover, ZeaVision has not offered much more than conclusory statements in support of its claim that it would be unduly prejudiced by a stay due to competition with Bausch. See Security People, 2015 WL 3453780, at *5 (noting courts in its district require evidence to support a claim that competition will result in undue prejudice); Hansen Mfg. Corp. v. Enduro Sys., Inc., No. CIV. 11-4030-KES, 2012 WL 381238, at *5 (D.S.D. Feb. 6, 2012) ("The fact that [plaintiff] did not offer more than conclusory statements about its loss of competitiveness … undercuts its claims that it will be prejudiced if a stay is granted.").

Nor will a stay put ZeaVision at a clear tactical disadvantage.  ZeaVision suggests that it would be put at a tactical disadvantage because of a risk of losing evidence, but it has not cited any specific evidence or witnesses that are at a particular risk of loss.  See VirtualAgility, 759 F.3d at 1319 ("It is … true … that

11

with age and the passage of time, memories may fade and witnesses may become unavailable.  Without more, however, these assertions are not sufficient to justify a conclusion of undue prejudice."); Telebrands, 2018 WL 1027452, at *3 (noting plaintiff did not "cite specific evidence or witnesses that [were] at particular risk of loss or deterioration").  ZeaVision also suggests that it would be put at a tactical disadvantage because the '133 patent will expire in December 2023, which it believes will be before the PTAB renders a final decision regarding the '384 patent.  While ZeaVision's assumption about the timing of the PTAB's final decision is likely incorrect,[3] the date of the '133 patent's expiration does weigh against a stay.  However, this is just one consideration, among many, in determining whether a stay would unduly prejudice ZeaVision or put it at a clear tactical disadvantage.

There is also no indication that Bausch possessed a dilatory motive.  Bausch filed its IPR petition regarding the '384 patent on October 22, 2021, which was about four months after this lawsuit was filed.  Bausch filed the present motion to stay less than two weeks later.  Given that Bausch expeditiously filed its IPR petition and motion to stay, there is little to suggest that it possessed a dilatory motive.  See VirtualAgility, 759 F.3d at 1319–20 ("There is no evidence that [d]efendants

---

[3] If the PTAB institutes IPR of the '384 patent, which it must decide to do by April 2022, it will likely render a final decision by April 2023.  See Intellectual Ventures II, 2014 WL 2511308, at *2 (explaining the PTAB must decide whether it will institute IPR within six months of the filing of an IPR petition and must issue a final decision within one year of instituting IPR unless the deadline for a final decision is extended for good cause).

possessed a 'dilatory motive.'  In fact, [defendant] filed its CMB petition less than four months after [plaintiff] instituted this infringement action and moved to stay the district court proceedings almost immediately after filing the petition."); <u>Masa</u>, 2016 WL 2622395, at *3 (finding no indication defendant possessed a dilatory motive where defendant "filed its IPR petition before claim construction briefing began … and promptly filed [its] motion to stay just four days later").

Finally, while not dispositive, it is significant that ZeaVision did not seek a preliminary injunction when this case began or when case No. 4:21 CV 1352 SEP began.  ZeaVision's decision not to seek preliminary injunctive relief tends to suggest that any prejudice that might result from a stay is not as severe as it contends. See <u>VirtualAgility</u>, 759 F.3d at 1319 ("[T]he fact that it was not worth the expense to ask for [a preliminary injunction] contradicts [plaintiff's] assertion that it needs injunctive relief as soon as possible."); <u>Destination Maternity Corp. v. Target Corp.</u>, 12 F.Supp.3d 762, 768 (E.D. Pa. 2014) ("[M]any courts have found that attempts by a patentee to argue undue prejudice are undermined if the patentee has elected not to pursue preliminary injunctive relief."); <u>Oticon A/S</u>, 2015 WL 5752429, at *2 ("Plaintiffs' decision not to seek a preliminary injunction against [d]efendants in this case, while by no means dispositive of the issue, tends to suggest [p]laintiffs would not be unduly prejudiced by a stay.").

In light of these considerations, I find that the third factor is either neutral or weighs only slightly against a stay.  See VirtualAgility, 759 F.3d at 1320 (finding the third factor weighed at most only slightly against a stay where the evidence of competition was weak, plaintiff delayed in pursuing suit and seeking preliminary injunctive relief, and there was no evidence defendant possessed a dilatory motive); Telebrands, 2018 WL 1027452, at *3 (finding the third factor did not weigh against a stay where plaintiff did not move for a preliminary injunction, did not offer specific evidence of undue prejudice due to competition, and did not cite specific evidence or witnesses at a particular risk of loss); Security People, 2015 WL 3453780, at *5 (finding the third factor was either neutral or weighed only slightly against a stay where defendant expeditiously petitioned for IPR and moved for a stay, and plaintiff did not present sufficient evidence of undue prejudice due to competition).

## CONCLUSION

For the foregoing reasons, I find it appropriate to stay all proceedings in this case at least until the PTAB decides whether to institute IPR of the '384 patent. Should the PTAB decide to institute IPR of the '384 patent, I will issue an order staying all proceedings in this case until the PTAB issues a final written decision regarding the '384 patent pursuant to 35 U.S.C. § 318.  To ensure the timely administration of this case, the parties will be ordered to file a joint status report

14

within seven days of the issuance of the PTAB's decision as to whether it will institute IPR of the '384 patent, informing me of the PTAB's decision.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Bausch & Lomb Incorporated's motion to stay all proceedings pending *inter partes* review [22] is **GRANTED**.  All proceedings in this case are **STAYED** until further order of the Court.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report within seven days of the issuance of the United States Patent Trial and Appeal Board's decision as to whether it will institute *inter partes* review of U.S. Patent No. 10,307,384, informing the Court of the United States Patent Trial and Appeal Board's decision.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE


Dated this 10th day of March 2022.